## IN RE ELIESER C.*
### (5936)

DUPONT, C. J., BORDEN and O'CONNELL, Js.

Argued December 4, 1987—decision released May 17, 1988

*Brian S. Carlow,* assistant public defender, with whom, on the brief, was *Ramona F. Stilley,* certified legal intern, for the appellant (respondent).

*Bruce A. Tonkonow,* state's advocate, for the appellee (state).

O'CONNELL, J. This juvenile respondent was adjudicated delinquent by virtue of being found guilty of one count of conspiracy to possess marihuana with

---

*In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

intent to sell in violation of General Statutes §§ 53a-48 and 21a-279 (b), and one count of being an accessory to possession of marihuana with intent to sell in violation of General Statutes §§ 53a-8 and 21a-279 (b). The respondent appeals, claiming (1) that there was insufficient evidence concerning both counts to prove the respondent delinquent beyond a reasonable doubt, and (2) that the court erred in failing to admit a police officer's report into evidence. We do not find error.

The court could reasonably have found the following facts. Two experienced narcotics police officers had a high crime area on Park Street in Hartford under surveillance. From their observation post, they saw the respondent, a twelve year old juvenile, and his father walk directly from an apartment building to an automobile. The father opened the car's trunk and lifted up a bag containing marihuana and numerous "zip lock" plastic bags of the type used in retailing marihuana. The respondent and his father conversed with their heads down over the open bag as though they were looking into it. A search of the respondent coincident with his arrest at the scene revealed $175 cash in his pocket, in denominations associated with the sale of marihuana.[1] It is common practice in the narcotics trade for sales to involve two individuals, one to hold the contraband and one to hold the money. This procedure is believed in the trade to impede the arrest of either person on a narcotics sale charge. The respondent's witnesses furnished conflicting evidence regarding an implausible explanation for this twelve year old boy's carrying $175 cash in his pocket at night in a dangerous area.

---

[1] The arresting officers testified that money seized in connection with the sale of marihuana usually consisted of bills in five and ten dollar denominations. Conversely, money seized in connection with the sale of cocaine or heroin generally consists of higher denomination bills. The $175 confiscated from the respondent consisted of eight $10 bills, eighteen $5 bills and five $1 bills.

## I

The first count charges conspiracy to possess marihuana with intent to sell. "To establish the crime of conspiracy under § 53a-48 of the General Statutes, the state must show [1] that there was an agreement between two or more persons to engage in conduct constituting a crime and [2] that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed." *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975).

While the state must prove, as the first element of the crime of conspiracy, the existence of an agreement, it is not required to prove that the agreement has been *formalized* in any manner. "[I]t is sufficient to show that [the coconspirators] are 'knowingly engaged in a mutual plan to do a forbidden act.' " Id., quoting *State* v. *Holmes,* 160 Conn. 140, 149, 274 A.2d 153 (1970). Moreover, the absence of direct evidence of such an agreement is not unusual because "conspiracies, by their very nature, are formed in secret and only rarely can be proved otherwise than by circumstantial evidence." *State* v. *Holmes,* supra, 150. We further note that it is well settled that circumstantial evidence has the same probative force in proving the existence of an element of a crime as direct evidence. *State* v. *Rollinson,* 203 Conn. 641, 666, 526 A.2d 1283 (1987). The evidence presented in this case was sufficient to support the court's finding that an agreement existed.

With regard to the second element of the crime of conspiracy, we conclude that in the present case only limited discussion of the overt act requirement is warranted. This element is satisfied if *any* party to the con-

spiracy, not merely the principal participant, commits an overt act in furtherance of the goals of the conspiracy. *State* v. *Ortiz,* supra. Therefore, the defendant need not be the party personally committing the act, in order to satisfy the second element of the crime. Id. In the present case, the overt act consisted of the possession of marihuana by the respondent's father, a fact not contested by the respondent.

Finally, with regard to the third element of conspiracy, we note that proof of intent is ordinarily grounded in circumstantial, rather than direct evidence. *State* v. *Smith,* 198 Conn. 147, 154–55, 502 A.2d 874 (1985). Although we review the sufficiency of the evidence presented to the trial court, it was for the trial court to decide whether the state had proved beyond a reasonable doubt that there was an agreement to commit a crime and whether the respondent possessed the requisite intent for commission of the crime charged.

Great weight is given to the action of the trial court and every reasonable presumption is made in favor of its correctness; the ultimate issue is whether the trial court could reasonably conclude at it did. *State* v. *Simino,* 200 Conn. 113, 116, 509 A.2d 1039 (1986); *State* v. *Summerville,* 13 Conn. App. 175, 184–85, 535 A.2d 818 (1988). Given this standard, we conclude there was sufficient evidence, together with the reasonable inferences drawn therefrom, to support the conviction of conspiracy to possess marihuana with intent to sell.

## II

The second count charges the defendant with being an accessory to possession of marihuana with intent to sell. General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or *intentionally aids another person to engage in*

*conduct which constitutes an offense* shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." (Emphasis added.)

To sustain a conviction as an accessory to a crime, the state must prove "a dual intent," that is " 'that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged.' (Emphasis in original.)" *State* v. *Foster,* 202 Conn. 520, 525–26, 522 A.2d 277 (1987), quoting *State* v. *Harrison,* 178 Conn. 689, 694, 425 A.2d 111 (1979).

The defendant argues that this "dual intent" requirement must be construed to mean that the defendant intended *personally* to commit the underlying crime. We disagree. Such an interpretation would render the accessory statute nearly meaningless if the defendant did not then go on to commit the underlying crime, or if he was prevented from doing so by intervening forces beyond his control. Under the defendant's reasoning, for example, a person who intentionally obtained and furnished a gun to a robber would not be guilty of being an accessory to robbery if he did not intend to also go forward and participate in the actual robbery. This is not the law. It would be sufficient for conviction as an accessory if the gun supplier merely knew that he was furnishing the robber with a weapon to be used in the robbery. In the applicable words of the statute, he could properly be found to be "a person who . . . intentionally aids another person to engage in conduct which constitutes an offense . . . ." General Statutes § 53a-8.

In the present case, there was sufficient evidence, together with the reasonable inferences drawn therefrom, for the trial court to find that the respondent was more than a mere inactive or passively acquiescing com-

panion. See, e.g., *State* v. *Maltese,* 189 Conn. 337, 343–44, 455 A.2d 1343 (1983). Experienced narcotic police officers testified to the significance of the role of a moneyholder in the marihuana sales trade. The trial court was at liberty to disbelieve the witnesses' implausible explanation for the child's presence in a dangerous area at night, in possession of a large sum of cash in denominations typical of marihuana sales. In light of the respondent's admitted knowledge of his father's possession of marihuana and materials suitable for the marihuana's sale, and in light of this court's duty to provide every reasonable presumption of correctness to the trial court's action, we conclude that the trial court did not abuse its discretion in evaluating the credibility of witnesses, in determining facts, and in drawing logical and reasonable inferences from those facts. "We cannot say that the inferences leading to the defendant's convictions were illogical or unreasonable." *State* v. *Vincent,* 194 Conn. 198, 208–209, 479 A.2d 237 (1984).

III

The respondent's third claim of error is that the court "refus[ed] to admit the police report into evidence. . . ." The gravamen of this claim is that the report constituted a prior inconsistent statement which could be used to prove the matters addressed therein and to attack its author's credibility. See *State* v. *Whelan,* 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

The transcript discloses that the officer's report was admitted into evidence, marked "Respondent's # 1" and was read by the court. Accordingly, any discussion by this court of the admissibility of this statement could have only academic interest. It is established policy to

refuse to entertain purely academic issues. *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571, 499 A.2d 1158 (1985).[2]

There is no error.

In this opinion the other judges concurred.

---

[2] We also note that the appellant appears to argue that his use of the police officer's report was improperly restricted by the trial court. A review of the transcript indicates that the report was entered into evidence for substantive as well as impeachment purposes. See *State* v. *Whelan,* 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).