### STATE OF CONNECTICUT *v.* TEDDY E. RUTH
### (6285)

DALY, STOUGHTON and FOTI, Js.

Argued May 17—decision released September 13, 1988

*Katherine C. Callahan,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Linda N. Knight,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of possession with intent to sell a narcotic substance (cocaine) and possession with intent to sell a narcotic

substance (heroin), both in violation of General Statutes § 21a-277 (a).[1] The defendant claims that the trial court erred (1) in determining that a conviction on both counts did not violate the prohibition against double jeopardy,[2] (2) in admitting currency into evidence without the establishment of a proper chain of custody, and (3) in finding sufficient evidence as to the defendant's identity and his possession with intent to sell. We find error in part.

The jury could reasonably have found the following facts. On January 3, 1987, at approximately 5:30 p.m., several members of the Bridgeport police department tactical squad converged at the intersection of Hallett Street and Martin Luther King Drive located in the Father Panik Village housing project. This intersection is known by the Bridgeport police to be a drug trafficking area. It is the duty of the tactical squad to enforce the narcotics laws of the state. Sergeant Joseph Convertito was in charge of the squad, and he was accompanied in his police cruiser by Sergeant Leonard Samatulski. Three or four other cruisers also participated in this operation. Officers Richard Gearing and James Viadera were on regular patrol duty assignment in Father Panik Village and joined the tactical squad.

---

[1] General Statutes § 21a-277 (a) provides in part: "Any person who . . . possesses with the intent to sell or dispense . . . to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned."

[2] The state conceded the defendant's claim of double jeopardy and requested this court to set aside the judgment on the second count (heroin) and remand the matter to the trial court with direction to render judgment that the defendant is not guilty as to that count only. We agree with the state that the convictions violated the prohibition against double jeopardy. State v. Williams, 12 Conn. App. 225, 230–34, 530 A.2d 627 (1987). Accordingly, with respect to this claim, we will grant the relief requested.

The cruisers approached the intersection where twenty-five to thirty people had gathered, despite cold and icy conditions. When the tactical squad cars pulled up to building 25, located on the corner of Martin Luther King Drive and Hallett Street, the crowd dispersed. A black male started to walk away, and then ran north on Hallett Street, followed by Gearing and Viadera in their patrol car. He ran off the road toward buildings 28 and 29, and the officers continued their pursuit on foot. Convertito and Samatulski saw the man being pursued by a patrol car on Hallett Street. They lost sight of the suspect, however, when he ran between two buildings.

In the course of the pursuit, the man discarded objects in the vicinity of a dumpster outside buildings 28 and 29. Viadera abandoned his pursuit to determine what had been discarded while Gearing continued the chase. Gearing kept the man in sight except for a moment when the officer slipped and fell during the chase. The officer rounded the corner of Church, Pembroke and Crescent streets and found a man, whom he took into custody. The chase lasted fifteen to twenty seconds, and Gearing had no doubt that the man he took into custody was the same person he had chased. Gearing communicated with Convertito and turned the suspect over to him and Samatulski when they arrived at the intersection. At the scene, the suspect later identified as the defendant, told Convertito that he ran because he had a knife and some joints of marihuana and that he threw them away when the officers arrived. The defendant indicated that he had no idea why he was being chased.

In his search of the area around the dumpster, Viadera located and picked up two blue packets which he suspected contained narcotics. He was joined by Officer Robert Halpin who was on patrol in the general area. Halpin, with the aid of his flashlight, discovered

four small white packets within ten feet of the dumpster. After surrendering the defendant to two of the other officers, Gearing also went to the dumpster area but did not discover any additional evidence. He returned to his patrol car where Viadera was waiting.

Gearing and Viadera proceeded to police headquarters where Viadera turned over the two blue packets to Halpin. Halpin then turned the packets over to Samatulski with the four white packets he had found. Halpin initialed each bag and Samatulski brought the packets to the records room after he conducted a field test on one bag. That test positively indicated the presence of cocaine.

At headquarters, the defendant was searched. The sum of $334 and empty plastic baggies were discovered on his person. The money was found to be "layered," which is a manner of folding money by denomination commonly used by drug sellers. Samatulski placed the money in a plastic evidence bag, stapled the bag and sealed it with tape before turning it over to the records room.

State toxicology tests subsequently indicated that the blue bags contained heroin and the white bags contained cocaine.

In his second claim of error, the defendant argues that his motion for acquittal and motion for a new trial should have been granted on the ground that the $334 recovered from him was improperly before the jury. Specifically, he argues that there was error because the money was not in the same condition at trial as when it was stored in the records room. We disagree.

"An object connected with the commission of a crime must be shown to be in substantially the same condition as when the crime was committed before it can properly be admitted into evidence." *State* v. *Pollitt,*

205 Conn. 61, 88, 530 A.2d 155 (1987); see also *United States* v. *Clark,* 425 F.2d 827, 833 (3d Cir. 1970); *State* v. *Johnson,* 162 Conn. 215, 232, 292 A.2d 903 (1972). " 'The state's burden with respect to chain of custody is met by a showing that there is a "reasonable probability" that the substance has not been changed in important respects.' *State* v. *Jones,* 167 Conn. 228, 239–40, 355 A.2d 95 (1974)." *State* v. *Nieves,* 186 Conn. 26, 31 n.4, 438 A.2d 1183 (1982).

At trial, the plastic bag containing the money was unsealed, there was no tape on the bag and no indication that it had ever been stapled. The money also was no longer "layered." Evidence adduced at trial, however, demonstrated that the bag contained the same amount of money that was seized from the defendant. Further, the evidence indicated that the bag contained the same number of each denomination of currency as was seized from the defendant.[3] Finally, Samatulski testified that the money offered at trial was in fact the money seized from the defendant.

The record discloses that when the assistant state's attorney offered the currency into evidence, the defense counsel conducted an extensive voir dire and then stated "I have no objection for the record, Your Honor."

When evidence comes in without objection, it may be given such weight as the trier of fact deems it worth. *State* v. *Rawls,* 198 Conn. 111, 118, 502 A.2d 374 (1985); *State* v. *Cox,* 7 Conn. App. 377, 388–89, 509 A.2d 36 (1986); B. Holden & J. Daly, Connecticut Evidence § 13. Although the defendant failed to object to the admission of the currency, the defendant seeks review of this claim under the plain error doctrine. "Review

[3] Seized from the defendant were seven $20 bills, thirteen $10 bills, six $5 bills and thirty-four $1 bills.

for plain error ' "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985).' *Kolich* v. *Shugrue,* 198 Conn. 322, 326, 502 A.2d 918 (1986)." *Small* v. *South Norwalk Savings Bank,* 205 Conn. 751, 759, 535 A.2d 1292 (1988). On the basis of the evidence presented at trial, we fail to find the existence of a "truly extraordinary situation" amounting to plain error.

The defendant's final claim of error concerns the sufficiency of the evidence. The defendant claims that the evidence is insufficient to prove that he was the man pursued by the Bridgeport police or even that he possessed narcotics with an intent to sell. Although the defendant conceded that these claims were not presented to the trial court, he nevertheless seeks review under *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973). See also *State* v. *Dickson,* 10 Conn. App. 462, 464, 523 A.2d 935 (1987). The record adequately supports the defendant's allegation that his claim is of constitutional dimension. We shall, therefore, review this claim.

"The issue of sufficiency of evidence and its appropriate standard of review have been analyzed countless times by both this court and our Supreme Court." *State* v. *Iovieno,* 14 Conn. App. 710, 712–13, 543 A.2d 766 (1988). " 'The issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt.' *State* v. *Bember,* 183 Conn. 394, 397, 439 A.2d 387 (1981) . . . . 'In ruling on such a motion, the evidence presented at trial must be given a construction most favor-

able to sustaining the jury's verdict.' *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978)." (Citations omitted.) *State* v. *Giguere,* 184 Conn. 400, 402–403, 439 A.2d 1040 (1981).

Gearing testified that he had no doubt that the black male he had apprehended at the corner of Church, Pembroke and Crescent streets was the same person he had chased through the projects. Samatulski identified the fleeing suspect as the defendant. Convertito was told by the defendant that he ran because he had a knife and some marihuana joints. On his way to headquarters, the defendant stated to the officers: "I don't know why he was chasing me. I was in front of the office. I have no idea why you people were chasing me."

" 'It is within the province of the jury to draw reasonable and logical inferences from the facts proven.' *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985). Nor must we or the jury abandon common sense." *State* v. *Laracuente,* 205 Conn. 515, 521, 534 A.2d 982 (1987). Convertito and Samatulski testified that they saw a black male break from the crowd on Hallett Street and Martin Luther King Drive and run down Hallett Street pursued by a patrol car. The sergeants also testified as to the lighting conditions provided by the street lamps. Viadera testified that he never lost sight of the suspect until he stopped to pick up the objects he had seen the suspect discard in the area of the dumpster. He also testified that he was able to see because of the large floodlights located on the top of the buildings. Finally, Gearing testified that the suspect was in his eyesight during the chase except for a brief time when he fell. Gearing also saw, in the vicinity of the dumpsters, the suspect discard objects from his pockets. The jury could reasonably have found that the defendant was the same black male who ran away from the crowd, discarded the narcotics while he was being pursued and was apprehended some fifteen to twenty seconds later

at the corner. As for the sufficiency of the evidence with respect to possession, the jury could reasonably have found, from the evidence presented at trial, that the packets of heroin and cocaine found in the vicinity of the dumpster were the objects discarded by the defendant during the pursuit.

Finally, we hold that there was sufficient evidence for the jury to infer an intent to sell narcotics. Circumstances here indicate that on a cold and icy evening, the defendant was in a known drug trafficking area. He departed the scene when the police arrived. Narcotics were found in the area of pursuit where he was seen to discard objects from his pockets. The defendant was found to have $334 on his person when apprehended, and the money was layered in the manner typical of drug dealers. The defendant also had empty plastic baggies on his person which, experienced narcotic police officers testified, are used to package narcotics in for street sale. There was no evidence that the defendant was a user of narcotics. In light of the foregoing, " '[w]e cannot say that the inferences leading to the defendant's conviction were illogical or unreasonable.' *State* v. *Vincent,* 194 Conn. 198, 208–209, 479 A.2d 237 (1984)." *In re Elieser C.,* 14 Conn. App. 445, 450, 541 A.2d 528 (1988).

After a scrupulous review of the record we think it manifest that there was more than sufficient evidence to allow the jury to have found beyond a reasonable doubt that the defendant was guilty of possession of a narcotic substance with intent to sell.

There is error in part, the judgment as to count two, possession of a narcotic substance (heroin) in violation of General Statutes § 21a-277 (a), is set aside and the case is remanded to the trial court with direction to render judgment that the defendant is not guilty on that count.

In this opinion the other judges concurred.