### STATE OF CONNECTICUT *v.* JAVIER QUINONES
### (8162)

SPALLONE, DALY and NORCOTT, Js.

Argued January 5—decision released May 15, 1990

*Philip Russell,* with whom, on the brief, was *Toby Schaffer,* for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom, on the brief, were *John Bailey,* state's attorney, and *Paul Murray,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals his conviction, after a jury trial, of two counts of violation of the dependency producing drug law, General Statutes § 21a-278 (b).[1] The defendant claims that the trial court

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the exe-

erred (1) in failing to suppress evidence seized from a locked automobile in a warrantless search, (2) by consolidating two informations and jointly trying the charged offenses, (3) by permitting the prosecution to cross-examine him about prejudicial and irrelevant matters, and (4) in failing to accept evidence of his drug dependency in denying his motion for a new trial and at sentencing. We find no error.

The evidence offered at trial reasonably supports the following facts. On the afternoon of May 24, 1988, two officers of the narcotics division of the Hartford police department arrested the defendant for selling drugs. The officers were conducting a general surveillance of an apartment complex on Annawan Street, an area notorious for its constant drug activity, when they observed the defendant engage in a series of transactions in which individuals approached and handed him money. The defendant in return handed each person one or more plastic bags taken from his pocket. The defendant fled at the officers' approach but was quickly apprehended and arrested. On the defendant's person were $580 and twelve packets of what proved to be heroin. Each packet was stamped with the trademark "Terrific." The defendant was shortly thereafter freed on bond.

On May 26, 1988, Detective Robert Kanaitis, a member of the police narcotics unit, received certain information from an established and reliable informant. The informant stated that the defendant, identified by name, would be returning from New York with 1500 bags of heroin for distribution and would be in a yellow Mazda at an Annawan Street address on the evening of May 28.

---

cution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

On this information, Kanaitis and a fellow police detective went to the named location at the time specified. The officers recognized the defendant in the driver's seat of a parked yellow Mazda. The defendant and his passenger, Elias Cruz, got out of the car. The officers observed the defendant open the passenger door, reach under the front seat and remove a brown paper bag. From this bag he withdrew three clear plastic bags, each in turn containing some number of plastic packets. The defendant gave one plastic bag to Cruz, retaining two for himself. He replaced the brown paper bag under the car's front seat, locked the passenger door and placed the key in his pocket. The defendant then entered one of the Annawan Street apartment buildings. Cruz remained near the car and was observed engaging in the apparent sale of some of the small packets. Cruz then followed the defendant into the apartment building.

The officers remained in their unmarked police car waiting for the defendant's return. When the defendant and Cruz reappeared more than one hour later, they were arrested and handcuffed. Using the car key seized from the defendant's pocket, one officer opened the locked car door and retrieved the paper bag from under the front seat. The bag contained nearly 1200 small heat sealed plastic packets, all labelled "Terrific" in red letters. The bags were later determined to contain heroin with a street value of approximately $20,000 to $30,000. After several days in custody, the defendant was released on bond.

The defendant was charged in two informations with possession of narcotics with intent to sell by a person who is not dependent in violation of General Statutes § 21a-278 (b). The court granted the state's motion for consolidation, and the informations charging the May 24 and May 28 transactions were joined for trial.

The court denied the defendant's motions to sever the informations and to suppress the evidence seized from the car. The defendant was convicted by a jury on both charges, and this appeal followed.

I

The defendant claims that the trial court erred in denying his motion to suppress the evidence of 1189 packets of heroin seized on May 28, 1988, from the locked automobile. He argues that the state failed to demonstrate that this warrantless seizure was justified under the automobile exception or as incident to a lawful arrest. We disagree.

Under both the federal and state constitutions, a warrantless search is per se unreasonable, subject to a few well defined exceptions. *State* v. *Dukes,* 209 Conn. 98, 121, 547 A.2d 10 (1988); *State* v. *Januszewski,* 182 Conn. 142, 151–52, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). These exceptions include the search of an automobile (1) where there is probable cause to believe the vehicle contains contraband, and (2) as incident to a lawful arrest. *State* v. *Delossantos,* 211 Conn. 258, 266, 559 A.2d 164, cert. denied,       U.S.    , 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); *State* v. *Badgett,* 200 Conn. 412, 428, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

In this case, the police officers, on the basis of their observations, training and experience, had probable cause to believe that the car contained packets of drugs connected to criminal activity. The inherent mobility of a car parked on a public street created the exigent circumstances justifying the warrantless search of the car and the seizure of the narcotics found therein under the automobile exception to the warrant requirement. See *State* v. *Badgett,* supra, 428–29.

We do not accept the defendant's argument that because probable cause to search the vehicle, based on reliable, detailed information, existed for a full twenty-four hours prior to the actual search, the state could not rely on a claim of exigency. Exigent circumstances are not limited to those where probable cause is unforeseeable; they may arise at any time. *Cardwell* v. *Lewis,* 417 U.S. 583, 595–96, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974). The fact that the police here may have earlier obtained a warrant "does not negate the possibility of a current situation's necessitating prompt police action." Id.; see also *State* v. *Kolinsky,* 182 Conn. 533, 541, 438 A.2d 762, cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1980).

The officers also had probable cause to arrest the defendant for what they reasonably believed to be the commission of the felonies of possessing and selling controlled substances. As incident to the arrest, the officers searched the car while the defendant remained at the scene. The defendant argues that the search of his automobile incident to his arrest cannot be justified here because he could not have reached the passenger compartment. After his arrest he was in handcuffs, on the street a distance from the car and the police had his only key to the locked vehicle. We need not engage in a factual analysis of the likelihood that the defendant could obtain a weapon or destroy evidence in his automobile. See *State* v. *Badgett,* supra, 428. A warrantless search of a vehicle incident to a lawful custodial arrest is permitted as long as the arrestee remains at the scene of the arrest at the time of the search. Id.

## II

The defendant next claims that it was error for the trial court to deny his motion to sever the charges against him into separate trials. He claims that the

cumulative effect of the evidence presented on two legally unrelated crimes overwhelmed the jury and prejudiced his defense. We disagree.

When the defendant stands accused of two or more similar offenses, such offenses may be joined at trial if they are based on related acts which evince a common scheme, intent or motive. *State* v. *Greene,* 209 Conn. 458, 464–65, 551 A.2d 1231 (1988). Joining factually similar but legally unrelated crimes, however, creates a risk of prejudice to the defendant. Id., 465; *State* v. *Horne,* 19 Conn. App. 111, 117–18, 562 A.2d 43 (1989). The question of joinder or severance rests on the sound discretion of the trial court; *State* v. *Carpenter,* 19 Conn. App. 48, 62, 562 A.2d 35 (1989); and the defendant bears the heavy burden of showing that a denial of severance resulted in substantial injustice beyond the curative power of jury instructions. *State* v. *Herring,* 210 Conn. 78, 95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989).

The defendant here was jointly tried for two instances within four days of selling heroin, in the same location, and in packages labelled with the same trademark. These similarities in the two crimes tended to show a common scheme. See *State* v. *Greene,* supra, 468–69; *State* v. *Cruz,* 18 Conn. App. 482, 485–87, 559 A.2d 231 (1987). The charges, therefore, could properly be joined for trial and the evidence was "cross-admissible." See *State* v. *Greene,* supra, 465.

Even if we were to accept the defendant's argument that the crimes were legally unrelated, the court nonetheless may join the charges for trial without abusing its discretion. The defendant here has not demonstrated that the jury was confused or overwhelmed by the cumulative evidence or that it was unable to consider the evidence relevant to each charge separately

and distinctly.[2] See *State* v. *Boscarino,* 204 Conn. 714, 721–22, 529 A.2d 1260 (1987); *State* v. *Horne,* supra, 118.

Our review of the record indicates that the state's presentation of the case was comprehensible to the jury and logically presented. The evidence as to each crime was presented by different witnesses and was factually distinct. Further, the jury was instructed to consider each crime as a separate charge, and, therefore, the defendant has failed to show that any prejudice resulting from joinder was not cured by these instructions. See *State* v. *Herring,* supra, 97. We conclude that the court did not err in allowing the consolidation of the informations and in denying the defendant's motion to sever.

## III

In his third claim, the defendant argues that the trial court erred when it permitted the state to cross-examine the defendant about his financial condition and the sources of his bond and collateral. This claim is without merit.

It is well established that the trial court has broad discretion in ruling on the admissibility and relevancy of evidence. *State* v. *Miller,* 202 Conn. 463, 482, 522 A.2d 249 (1987). A court's ruling on such evidentiary matters will not be reversed unless the defendant shows a clear abuse of discretion. *State* v. *Watkins,* 14 Conn. App. 67, 73, 527 A.2d 1157, cert. denied, 208 Conn. 804, 545 A.2d 1102 (1988). The extent of cross-examination is similarly within the trial court's discre-

[2] The defendant argues that the danger, that the jury would aggregate the evidence to convict for both crimes, was exacerbated because the jury was permitted to consider illegally seized evidence. As we have decided that the evidence of the heroin packets was constitutionally seized from the car, this argument is unpersuasive.

tion, particularly when aimed at credibility. *State* v. *Thompson,* 191 Conn. 146, 148, 463 A.2d 611 (1983). Cross-examination, even if beyond the scope of direct, is permitted to impeach a witness' direct testimony. *State* v. *Sharpe,* 195 Conn. 651, 657, 491 A.2d 345 (1985). Further, "[a] party who initiates discussion on the issue, [whether on direct or cross-examination,] is said to have "opened the door" [to further inquiry] by the opposing party." *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986).

The defendant elected to testify at trial and was examined as to his work history, his earnings, his financial obligations and his lifestyle in general. Defense counsel asked him how much cash he had in his possession at the time of his arrest and how much he had in savings accounts. On cross-examination, the state continued to delve into the question of the defendant's financial condition, and asked how he was able to post a $160,000 bond with so little savings. Although the defendant objected that the state's questions went beyond the scope of direct examination, it is clear that the defendant himself put his financial status in issue. The questions were relevant to the state's contention that the defendant was a major narcotics distributor and not merely a street level seller, and were appropriate to impeach the defendant's testimony that he had limited funds. In allowing this cross-examination, the court acted properly within its discretion.

## IV

Finally, the defendant claims that the court should have considered his drug dependency in ruling on his motion for a new trial and in determining his sentence. Prior to trial the defendant had offered a psychiatric report concluding that the defendant was drug-dependent, but he did not offer this evidence at trial or ask the court to make a finding on the question of his depen-

dency. The court denied the defendant's post-conviction motion for a new trial which, for the first time, raised the issue of whether he was drug dependent at the commission of the offenses. The court also refused to accept the defendant's evidence on this issue at sentencing and, thus, failed to exempt him from the minimum sentences mandated by § 21a-278 (b) for non-drug-dependent persons.

The defendant concedes that he made a tactical decision not to proffer evidence of his drug dependency at trial, predicated on his fear that the evidence would adversely affect the jury's deliberations. He now argues that, nevertheless, the court should not have been precluded from later making this finding outside the presence of the jury. We disagree.

The defendant, in effect, asks us to establish, by judicial fiat, a bifurcated procedure where the fact of drug dependency would be made, not by the fact finder at trial, but at a separate hearing. We are disinclined to mandate such a procedure.

General Statutes § 21a-278 (b) establishes different minimum penalties for persons convicted of possessing narcotics with the intent to sell on the basis of whether they are drug dependent at the time of the offense. The defendant bears the burden of providing evidence of his physical condition and of rebutting the presumption of non-dependency. *State* v. *Januszewski,* supra, 166–68; *State* v. *Luca,* 19 Conn. App. 668, 678, 564 A.2d 752 (1989). The court determines whether the defendant has produced sufficient evidence to put the question of his dependency in issue, but the jury must determine whether the state has disproved the dependency beyond a reasonable doubt. *State* v. *Luca,* supra, 672. A separate later hearing, as suggested by the

defendant, would impermissibly remove the issue from the province of the trier of fact. The defendant here made a voluntary decision to forego his opportunity at trial to raise the issue of his drug dependency. We will not create a new procedure merely to give him a second chance.

There is no error.

In this opinion the other judges concurred.