STATE OF CONNECTICUT *v.* CLARENCE GLENN
(11031)

DALY, FOTI and LAVERY, Js.

Argued January 19—decision released April 6, 1993

*Sheila M. Berger,* assistant public defender, for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Eva B. Lenczewski,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a).[1] The defendant claims on appeal that the trial court improperly (1) denied his motion to suppress and (2) denied his motion for judgment of acquittal.

On August 8, 1990, the defendant was arrested for selling narcotics.[2] Prior to trial, the defendant moved to suppress evidence of the cocaine retrieved from his tractor trailer. The trial court denied his motion to suppress and the trial proceeded. At the close of the state's case-in-chief, the defense moved for judgment of acquittal. After the trial court denied the defendant's motion, the defense presented its case. Following his conviction for possessing narcotics with intent to sell, the defendant was sentenced to a term of ten years, execution suspended after five years, with five years probation. Further facts are set forth below as necessary.

## I

The defendant claims that his motion to suppress the narcotics should have been granted because the warrantless search of the tractor trailer did not fall within any of the exceptions to the warrant requirement and,

[1] General Statutes § 21a-277 (a) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance . . . for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

[2] The defendant was charged by an original information in three counts for violating the following provisions: General Statutes § 21a-278 (b), sale of certain illegal drugs by a person who is not drug-dependent; General Statutes § 21a-277 (b), sale of a controlled substance; and General Statutes § 21a-278 (a), sale of certain illegal drugs by a person who is not drug-dependent.

as such, his rights under the fourth and fourteenth amendments to the United States constitution were violated.[3] We disagree.

"The Fourth Amendment to the United States constitution protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures.' Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. '[A] search conducted without a warrant issued upon probable cause is *"per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." ' *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), quoting *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 454–55, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971) . . . ." (Citations omitted.) *State* v. *Badgett,* 200 Conn. 412, 423, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

The trial court denied the defendant's motion to suppress after determining that the state satisfied its burden of proving that the search was valid under two exceptions to the warrant requirement.[4] The trial court determined that the search was legal pursuant to the motor vehicle exception to the warrant requirement, which allows evidence found in a vehicle to come into

---

[3] Because the defendant has not provided an independent analysis of his claim under our state constitution, we will review it only under the federal constitution. Our Supreme Court and this court have declined to review a defendant's state constitutional claim, deeming it to be abandoned, when the defendant has not separately briefed and analyzed that claim. *State* v. *Migliaro,* 28 Conn. App. 388, 394 n.2, 611 A.2d 422 (1992).

[4] There is no dispute that there was, indeed, a search and that the defendant's arrest was lawful.

evidence "where there is probable cause to believe that a motor vehicle contained contraband or evidence pertaining to a crime; *United States* v. *Ross,* 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *Arkansas* v. *Sanders,* 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979) . . . ." (Citations omitted.) *State* v. *Badgett,* supra, 424.[5] We find that the motor vehicle exception applies to this case and is dispositive of this issue.

The following facts are relevant to the motion to suppress. On August 8, 1990, at approximately 3 p.m., the Waterbury police department's tactical narcotics team set up a surveillance operation in the vicinity of North Square Park, a notorious drug trafficking area in Waterbury. The team utilized 452½ North Main Street, a public parking lot, for the surveillance because it provided an unobstructed view of the surrounding area. Detective Nicholas DeMatteis had been conducting the surveillance for approximately thirty minutes from an unmarked white van designed for surveillance when he observed what appeared to be a drug transaction between the defendant and a male subsequently identified as Willie Shears.

The defendant had been selling watermelons from the rear of his tractor trailer, which was parked close to the curb along North Main Street. The tractor trailer was owned by the defendant and his name was printed on it. At the time of the surveillance, the trailer's right rear door was open and the left door was closed. DeMatteis saw Shears pass money to the defendant

---

[5] The trial court also relied upon the exception for searches made " 'incident to a lawful custodial arrest'; *New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *United States* v. *Robinson,* 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *State* v. *Shaw,* 186 Conn. 45, 48, 438 A.2d 872 (1982) . . . ." (Citations omitted.) *State* v. *Badgett,* 200 Conn. 412, 424, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

who then entered the trailer by climbing a step ladder he had placed against the trailer. When the defendant emerged from the inside of the trailer, he handed something small to Shears. As he left the defendant, Shears walked past the surveillance van and DeMatteis observed small clear plastic bags in Shears' hand. From his observations and experience, DeMatteis believed that these bags contained crack cocaine.

After receiving a radio communication from DeMatteis explaining what he had observed, Sergeant Nicholas Guerriero and other members of the Waterbury police department[6] arrested Shears after a brief chase. Their search of Shears yielded three small, clear plastic bags containing crack cocaine valued at $20 per bag.

The officers then proceeded to the parking lot where the defendant was under surveillance. The defendant was arrested for selling narcotics. At the time of his arrest, the defendant was standing at the rear of the tractor trailer near the ladder leading into the trailer portion of the vehicle. The defendant carried $401 in currency and $100 worth of food stamps on his person when he was arrested.

After the defendant was arrested, Guerriero mounted the step ladder leading into the open right hand door at the rear of the trailer and peered into the trailer. There were watermelons, magazines and straw in the trailer. Guerriero also observed a black pouch approximately one foot behind the closed, left door of the trailer. The black pouch is consistent with the type of containers in which dealers store their narcotics. A search of the black pouch produced thirty-two plastic bags containing a rock like substance that was subsequently determined to be crack cocaine, plus six plastic bags containing a white powder that was determined

---

[6] Only DeMatteis and Guerriero testified at the suppression hearing.

to be salt form cocaine. No other individuals were observed at the scene during the surveillance. The trial court considered the tractor trailer to be capable of being operated.

The trial court determined that the warrantless search was justified under the automobile exception. "The justification for this . . . exception is twofold: (1) the inherent mobility of an automobile creates exigent circumstances; and (2) the expectation of privacy with respect to one's [vehicle] is significantly less than relating to one's home or office. *California* v. *Carney,* 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Badgett,* supra, 428.

As to the first criterion, the trial court found that the tractor trailer was a vehicle and was capable of being moved readily. At the time of the search, the tractor trailer was fully operable and inherently mobile since the dolly wheels were easily retractable. The trailer was parked in an unfenced, open parking lot less than ten feet from the street. Testimony before the court established that when the tractor trailer was taken into custody and towed to the area where it was secured, the tractor trailer had to be operated to park it in the secure lot. Thus, the trial court properly concluded that the inherent mobility of the tractor trailer created exigent circumstances to justify the search. *State* v. *Quinones,* 21 Conn. App. 506, 510, 574 A.2d 1308, cert. denied, 215 Conn. 816, 576 A.2d 546 (1990).

"The absence of probable cause, despite the exigency created by the ready mobility of automobiles and the lesser expectation of privacy in them, will render any warrantless search unreasonable." *State* v. *Badgett,* supra, 429. "This exception to the warrant requirement demands that the officers have probable cause to believe that the vehicle contains contraband. *Carroll*

v. *United States,* [267 U.S. 132, 153–54, 45 S. Ct. 280, 69 L. Ed. 543 (1925)]. The probable cause determination must be based on objective facts that could have justified the issuance of a warrant by a neutral magistrate at the time the search was made. *United States v. Ross,* supra, 808." *State v. Badgett,* supra.

The trial court found that probable cause existed for the officers to believe that the tractor trailer and the black pouch contained contraband. We agree. The police had probable cause to search the trailer and the pouch because they had reason to believe that narcotics were present in the trailer given the transaction between the defendant and Shears during which the defendant entered the trailer to retrieve the small items he handed to Shears. Those small items were determined to be three small plastic bags containing crack cocaine when they were found on Shears' person directly following the exchange. Moreover, no narcotics were found on the defendant when he was arrested. On the basis of the officers' observations, training and experience, there was probable cause to believe that the trailer contained the packets of narcotics. Immediately after he peered inside the trailer, Guerriero noticed the black pouch, which he recognized as the type of container in which dealers store their narcotics. Thus, the warrantless search of the trailer and the black pouch was justified. *State v. Quinones,* supra. Because the applicability of this exception is dispositive, we will not reach the trial court's other ground for denying the motion to suppress or alternate grounds set forth by the state.

## II

The defendant's second claim challenges the trial court's denial of his motion for judgment of acquittal. The defendant contends that the evidence adduced at trial was insufficient to sustain his conviction under

General Statutes § 21a-277 (a). The defendant asserts that the state failed to prove beyond a reasonable doubt that he possessed the narcotics found in his tractor trailer and that he intended to sell the narcotics, two elements of the crime of possession of a narcotic substance with intent to sell.

The defendant moved for judgment of acquittal at the completion of the state's case. Practice Book § 864. This motion was denied and the defendant offered evidence in his defense. The defendant did not move for a judgment of acquittal a second time.[7] "Under the existing rules, when a defendant elects to put on evidence after a denial of his motion for judgment of acquittal at the end of the state's evidence, he is deemed to have waived his right to appellate review as to the sufficiency of the evidence at the completion of the state's case. *State* v. *Booker,* 28 Conn. App. 34, 41–42, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992); *State* v. *Kari,* 26 Conn. App. 286, 291, 600 A.2d 1374 (1991), appeal dismissed, 222 Conn. 539, 608 A.2d 92 (1992)." *State* v. *Wolff,* 29 Conn. App. 524, 527, 616 A.2d 1143 (1992). Although the waiver rule has drawn criticism; see *State* v. *Booker,* supra; *State* v. *Simino,* 200 Conn. 113, 118 n.5, 509 A.2d 1039 (1986); *State* v. *Lizzi* 199 Conn. 463, 464–65, 508 A.2d 16 (1986); *State* v. *Rutan,* 194 Conn. 438, 444, 479 A.2d 1209 (1984); *State* v. *Duhan,* 194 Conn. 347, 352, 481 A.2d 48 (1984); it is still accepted as the law in Connecticut and we will apply it in this case. *State* v. *Wolff,* supra, 527–28 n.5. Thus, because the motion was not renewed, we need not address the defendant's claim.

Even if the defendant had properly made a second motion for judgment of acquittal, his claim would

[7] Our rules of practice provide for motions for judgment of acquittal at the close of the state's case; Practice Book §§ 863, 864; at the completion of all of the evidence; Practice Book §§ 863 and 865; and after a verdict of guilty. Practice Book § 899.

nevertheless fail. "When a claim on appeal challenges the sufficiency of the evidence, we undertake a two-part task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *King,* 216 Conn. 585, 600, 583 A.2d 896 (1990). "In reviewing the sufficiency of the evidence supporting a jury verdict, this court must construe that evidence in the most favorable manner reasonably possible to support the jury verdict." (Internal quotation marks omitted.) Id., 601. "Our inquiry focuses on whether a rational trier of fact could find guilt proven beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Holder,* 18 Conn. App. 184, 194, 557 A.2d 553 (1989).

"It should also be noted that [i]n this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . *State* v. *Allen,* 216 Conn. 367, 381, 579 A.2d 1066 (1990). . . . *State* v. *Salz,* 26 Conn. App. 448, 458, 602 A.2d 594, cert. granted, 222 Conn. 901, 606 A.2d 1329 (1992). This court will not reweigh the evidence or resolve questions of credibility in making such a determination. *State* v. *Melillo,* 17 Conn. App. 114, 117, 550 A.2d 319 (1988). It is within the province of the jury to draw reasonable and logical inferences from the facts proven. *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985). . . . *State* v. *Ruth,* 16 Conn. App. 148, 154, 547 A.2d 548 (1988), cert. denied, 209 Conn. 827, 552 A.2d 434 (1989)." (Internal quotation marks omitted.) *State* v. *Ogrinc,* 29 Conn. App. 694, 697, 617 A.2d 924 (1992).

## A

"In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985); *State* v. *Parent,* [8 Conn. App. 469, 473, 513 A.2d 725 (1986)]." (Internal quotation marks omitted.) *State* v. *Melillo,* supra, 117–18. "Where, as in the present case, the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact." *State* v. *Brunori,* 22 Conn. App. 431, 436, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990).

Here, the observations of DeMatteis indicated that the defendant was the only person to enter and exit the trailer during the period of observation. The truck was registered in his name and his name was printed on the truck. The jury could have discredited the testimony of the defendant's son that he also had been in the truck that day while helping his father sell the watermelons. Even if such testimony was found to be credible, other incriminating circumstances support the inference that the defendant constructively possessed the thirty-eight packets of narcotics. The defendant owned the tractor trailer. *State* v. *Santiago,* 17 Conn. App. 273, 278, 552 A.2d 438 (1989). The occurrence of the sale and the defendant's proximity to the rear of the truck at all times further buttress an inference of possession. See *State* v. *Williams,* 12 Conn. App. 225, 236, 530 A.2d 627 (1987).

Thus, the jury could reasonably and logically have found from the evidence elicited at trial that the defendant possessed the narcotics.

## B

Moreover, sufficient evidence of the defendant's intent to sell was offered to support his conviction. Proof of intent is usually established through circumstantial evidence from which the jury may draw reasonable and logical inferences. *State* v. *Napoleon,* 12 Conn. App. 274, 284, 530 A.2d 634, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987); *State* v. *Avila,* 166 Conn. 569, 576, 353 A.2d 776 (1974). "We note that it is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving circumstantial evidence. *State* v. *Napoleon,* supra, 284–85." (Internal quotation marks omitted.) *State* v. *Ogrinc,* supra, 699. We find from the evidence presented that the jury could reasonably and logically have determined that the defendant possessed narcotics with the intent to sell them.

"The quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs. *State* v. *Jennings,* 19 Conn. App. 265, 270, 562 A.2d 545, cert. denied, 212 Conn. 815, 565 A.2d 537 (1989). Also indicative of the defendant's intent to sell narcotics is the manner in which the narcotics are packaged. *State* v. *Ruth,* supra, 155; *State* v. *Napoleon,* supra, 284. Evidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell. *State* v. *Ruth,* supra, 155." (Internal quotation marks omitted.) *State* v. *Ogrinc,* supra.

The defendant was found to have $401 in currency and $100 in food stamps on his person. He was present in an area notorious for drug trafficking. The black pouch containing small bags of cocaine and crack cocaine was located just inside the trailer portion of the tractor trailer that the defendant owned and from

which he sold watermelons. The packaging of the cocaine and crack cocaine is consistent with narcotics sales. There was no evidence that the defendant used narcotics, yet thirty-eight small bags of narcotics were in his tractor trailer. *State* v. *Ruth,* supra. The quantity of cocaine and crack is consistent with street level narcotics sales and are indicative of the defendant's intent to sell the narcotics. The large number of bags of narcotics in the defendant's possession is a fact from which the inference of possession with intent to sell can be drawn. *State* v. *Bowens,* 24 Conn. App. 642, 649, 591 A.2d 433, cert. denied, 220 Conn. 906, 593 A.2d 97 (1991). In light of the foregoing, "we cannot say that the inferences leading to the defendant's conviction were illogical or unreasonable" or insufficient to support a guilty verdict. *State* v. *Ruth,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.