## State of Connecticut *v.* Shelton Smith
### (5792)

Borden, Spallone and Foti, Js.

Argued April 6—decision released July 5, 1988

*Brian M. O'Connell,* with whom were *Steven F. Meo* and, on the brief, *Aaron P. Slitt,* for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, was *David Gold,* assistant state's attorney, for the appellee (state).

Foti, J. The defendant appeals from the judgment of conviction, after a jury trial, of larceny in the third

degree, as an accessory, in violation of General Statutes §§ 53a-8 and 53a-124 (a) (1), and conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 and 53a-124 (a) (1). The defendant claims on appeal that the trial court erred (1) in denying his motion for judgment of acquittal, and (2) in refusing to suppress the statement of a codefendant. We find no error.

From the evidence presented, the jury could reasonably have found the following facts. On April 23, 1986, at approximately 4 p.m., the defendant and three others, two men, Joseph Lemarr and an unidentified male wearing a white jacket, and a woman, Crystal Gaston, entered the Concord 9 Jewelry Store located at 848 Chapel Street in New Haven. There were no customers in the store at the time. Once inside the store, the group of four separated and began browsing, but continued to consult with each other while they looked at jewelry. The defendant, who wore a long black overcoat, and the unidentified male each tried on a $6500 gold chain and medallion, placing it on each other's neck, while they bargained with the owner about the cost. The owner thought the two were either close friends or brothers. During this time, Gaston inquired about the price of items located in various display cases. No purchase was made by any of the four. They were subsequently seen together conversing and browsing in a nearby jewelry shop. Approximately one half hour after they had left the Concord 9 Jewelry Store, the defendant and his three companions returned; there were still no customers in the store. The defendant asked to see a medallion from the window. The unidentified male manipulated a display case lock and complained to Lemarr, "Man, I can't get it." Lemarr then began shaking windows of the display case. The defendant and the owner began bargaining over the price of another item when the owner decided not to do busi-

ness with him and asked him to leave. The defendant stationed himself in the store's foyer. Lemarr and Gaston then distracted the owner by arguing with her over the price of various items of jewelry. While they were arguing with the owner, the unidentified male grabbed an entire tray of jewelry, stuffed the jewelry in his coat and ran from the store. That jewelry was valued at approximately $4000.

Although all four had exited the store, the defendant was physically restrained outside of the store by a security guard who had observed the defendant push one of the owners out of his way in an attempt to run. The defendant was searched and found to be in possession of $1000 in cash and a message beeper. His long coat had rips in its lining which could have been used to conceal stolen items. Shortly thereafter, Gaston and Lemarr were apprehended and returned to the scene by the police. Neither had any of the stolen jewelry. Both the defendant and Gaston denied involvement in the theft and knowledge of the thief's identity. Both the defendant and Gaston stated that they had arrived in New Haven by bus that morning from Hartford with Lemarr.

The defendant contends that the trial court's denial of his motion for a judgment of acquittal violated his right of due process because the state had failed to sustain its constitutionally mandated burden of proof. The state must prove each and every material element of the crime charged beyond a reasonable doubt. *State* v. *Green,* 194 Conn. 258, 274, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). The defendant contends that there was insufficient evidence on both the count of conspiracy, and the count of aiding or abetting for the jury to find him guilty as charged.

"The standard that applies when a jury verdict is challenged for insufficiency of the evidence is well set-

tled. The issue is whether the jury could reasonably have concluded, upon the facts established and inferences reasonably drawn therefrom, that the defendant was guilty beyond a reasonable doubt. *State* v. *Baskins,* 12 Conn. App. 313, 316, 530 A.2d 663 (1987). 'The evidence must be given a construction most favorable to sustaining the jury's verdict.' *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985); see *State* v. *Monk,* 198 Conn. 430, 432, 503 A.2d 591 (1986). Every element of the crime charged must be proved and, although it is in the province of the jury to draw logical inferences from the facts proven, they may not resort to speculation." *State* v. *Robinson,* 14 Conn. App. 40, 42, 539 A.2d 606 (1988). "In reaching conclusions from the totality of the evidence presented; *State* v. *Simino,* 200 Conn. 113, 116–17, 509 A.2d 1039 (1986); the jury is permitted to apply its own experience and common sense. See *State* v. *Sullivan,* 11 Conn. App. 80, 96, 525 A.2d 1353 (1987); *State* v. *Perez,* [10 Conn. App. 279, 291, 523 A.2d 508 (1987)]." *State* v. *Johnson,* 14 Conn. App. 586, 597, 543 A.2d 740 (1988).

"To establish the crime of conspiracy under General Statutes § 53a-48 , the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. *State* v. *DeMatteo,* 186 Conn. 696, 707, 443 A.2d 915 (1982)." *State* v. *Vessichio,* 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). "The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are 'knowingly engaged in a mutual plan to do a forbidden act.' *State* v. *Holmes,* 160 Conn. 140, 149, 274 A.2d 153 [1970]." *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975). Further, the state must show an intent on the part of the

accused that conduct constituting a crime be performed. "A conviction of the crime of conspiracy can be based on circumstantial evidence, for conspiracies, by their very nature, are formed in secret and only rarely can be proved otherwise than by circumstantial evidence. *State* v. *Holmes,* supra, 150." *State* v. *Ortiz,* supra.

We agree with the state that the evidence was sufficient to prove that the defendant was a criminal participant in the conspiracy to commit larceny in the third degree, and that there was sufficient evidence to establish that the defendant intended to commit that crime. *State* v. *Sober,* 166 Conn. 81, 93, 347 A.2d 61 (1974). The defendant was not merely present at the scene, he came with the principal to the scene of the theft, stayed with him while they both examined jewelry in the store, assisted in attempting to distract the store owners, left with his associates, stayed with them at a nearby jewelry store, returned with that same group, again attempted to distract the store owners, left the store moments before the actual theft, and attempted to flee the scene of the crime with his three companions.

It is for the jury to decide what reasonable inferences should be properly drawn from the evidence presented. *State* v. *Morrill,* 193 Conn. 602, 609, 478 A.2d 994 (1984). Here, the jury reasonably could have concluded from the evidence in this case that the defendant was engaged in a criminal conspiracy to commit theft.

The defendant claims that his conviction as an accessory to larceny cannot stand because the state failed to prove that he was more than an inactive companion of the perpetrator. We cannot agree. General Statutes § 53a-8 provides that a person who, with the intent required to commit a crime, does an act for the purpose of assisting another in the commission of the crime is as guilty as the principal actor. *State* v. *McCalpine,*

190 Conn. 822, 833–34, 463 A.2d 545 (1983); *State* v. *Harrison,* 178 Conn. 689, 694–95, 425 A.2d 111 (1979). "Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it." *State* v. *Laffin,* 155 Conn. 531, 536, 235 A.2d 650 (1967). An accessory must have both the intent to help the principal and the intent to commit the crime. *State* v. *Vincent,* 194 Conn. 198, 207, 479 A.2d 237 (1984).

The evidence presented here was sufficient for the jury to find more than mere presence, passive acquiescence or innocent acts. The evidence was sufficient to allow the jury to infer that the defendant knowingly and intentionally participated in this criminal behavior. "It is the trier's function not only to decide credibility but also to determine the facts and from those facts draw logical and reasonable inferences. *State* v. *Wilson,* 178 Conn. 427, 434, 423 A.2d 72 (1979); *State* v. *Ortiz,* [supra, 646]." *State* v. *Haddad,* 189 Conn. 383, 390, 456 A.2d 316 (1983). We cannot say that the inferences leading to the defendant's convictions were illogical or unreasonable.

The defendant next challenges the trial court's decision to allow the introduction of a statement made by the codefendant Gaston. In that statement, Gaston denied knowing the identity of the male in the white jacket, but she did state that the defendant and Lemarr had come to New Haven with her that morning by bus from Hartford. The defendant gave an identical statement to the investigating officers, which was introduced into evidence.

The trial court refused the defendant's request for a hearing in limine, concluding that the statement by

Gaston, although slightly inculpatory, was nevertheless probative and admissible, and that it was not made during the course of the conspiracy. After the investigating officer testified regarding the contents of the statement, the court instructed the jury that Gaston's statement could not be used as evidence of the defendant's guilt.

The defendant contends that the admission of Gaston's statement denied him his constitutional right to confront witnesses against him. A defendant's right to confront witnesses against him is guaranteed by both the sixth amendment to the constitution of the United States and by article first, § 8, of the Connecticut constitution. The confrontation clause is satisfied when the defense is given the opportunity to conduct full and fair cross-examination. *Delaware* v. *Fensterer,* 474 U.S. 15, 21–22, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985); *State* v. *Yednock,* 14 Conn. App. 333, 339, 541 A.2d 887 (1988).

The defendant relies on *Bruton* v. *United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), for his claim that he was denied his right to confront witnesses against him. In *Bruton,* the United States Supreme Court was faced with a codefendant's confession which specifically implicated the defendant. In finding the confession inadmissible, the court concluded: "[B]ecause of the substantial risk that the jury, despite instruction to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of [the codefendant's] confession in this joint trial violated petitioner's right of cross-examination served by the Confrontation Clause of the Sixth Amendment." Id., 126.

More recently, the question of an interlocking confession was considered in *Cruz* v. *New York,* 481 U.S. 186, 107 S. Ct. 1715, 95 L. Ed. 2d 162 (1987). The

United States Supreme Court rejected the argument that interlocking confessions are not within the *Bruton* rule, stating: "[W]here a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant . . . the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him. Of course, the defendant's confession may be considered at trial in assessing whether this codefendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him (assuming the 'unavailability' of the codefendant) despite the lack of opportunity for cross-examination . . . and may be considered on appeal in assessing whether any Confrontation Clause violation was harmless . . . ." (Citations omitted.) Id., 193–94.

The state argues that Gaston's statement was not a "confession" as that term was used by the *Bruton* court and its admissibility is, therefore, controlled by *Richardson* v. *Marsh,* 481 U.S. 200, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987). In *Richardson,* the prosecution introduced a redacted "confession" by the codefendant. As in this case, the "confession" in *Richardson* did not, on its face, incriminate the defendant. The court distinguished its holding in *Bruton:* "In *Bruton,* the codefendant's confession 'expressly implicat[ed]' the defendant as his accomplice . . . thus at the time that confession was introduced there was not the slightest doubt that it would prove 'powerfully incriminating.' . . . By contrast, in this case the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial . . . ." *Richardson* v. *Marsh,* supra, 208. "Ordinarily a witness whose testimony is introduced at a joint trial is not considered a witness 'against' a defendant if the

jury is instructed to consider that testimony only against a codefendant. This accords with the almost invariable assumption of the law that jurors follow their instructions." Id., 206.

In this case, Gaston's statement only indirectly implicated the defendant, if at all, and was only slightly incriminating, if at all. It was not "powerfully incriminating" as in *Bruton* and *Cruz*. We, therefore, conclude that the facts of this case fall squarely within the reasoning of *Richardson,* and that there is no reason to presume that the jurors disregarded the repeated instructions; see *State* v. *Moye,* 199 Conn. 389, 396, 507 A.2d 1001 (1986); *State* v. *Glenn,* 194 Conn. 483, 497, 481 A.2d 741 (1984); that Gaston's statement was not to be considered against the defendant in this case.

There is no error.

In this opinion the other judges concurred.