STATE OF CONNECTICUT *v.* DEREK LAMAR LEWIS
(10947)

LAVERY, LANDAU and FREEDMAN, Js.

Argued September 29—decision released December 21, 1993

*James M. McKay,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's

attorney, and *Gerard Eisenman,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from his conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes §§ 53a-8[1] and 53a-134 (a) (3).[2] The defendant claims that the trial court improperly (1) denied his posttrial motion for judgment of acquittal because there was insufficient evidence from which the jury could find the defendant guilty beyond a reasonable doubt, and (2) intervened during testimony of a state's witness, which reflected favorably upon the witness' credibility, thereby depriving the defendant of a fair and impartial judge and jury. We agree with the defendant's first claim and reverse the judgment of the trial court. Because this is dispositive of the appeal, we need not address the remaining claim.

The jury could have reasonably found the following facts. On November 20, 1991, Kim Goldsmith, an assistant manager of Arby's Restaurant at the Trumbull Shopping Park, and the defendant, also an Arby's employee, were working alone in the restaurant between 8 and 9 p.m. Goldsmith was taking food orders from customers and the defendant was preparing the food orders in the kitchen area located in the rear of the premises. At approximately 8:50 p.m., Goldsmith

---

[1] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[2] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

observed the defendant talking to Nelson Castillo at an employee's gate. Goldsmith told the defendant to return to work.

At the 9 p.m. closing time, Goldsmith lowered the restaurant's electronic gate to counter level, and he and the defendant cleaned the restaurant equipment. Goldsmith emptied the cash drawers and counted the money. At about 9:50 p.m., while Goldsmith was working at his desk, he was approached from behind. A hand covered his eyes and a knife was placed at his throat. The attacker called Goldsmith by name and told him that if he cooperated he would not be harmed. The attacker then shoved Goldsmith into a nearby walk-in freezer. As Goldsmith struggled to keep the freezer door from closing, the attacker flailed the knife up and down in the freezer doorway. Goldsmith then forced the freezer door open, and ran out of the restaurant into the mall hallway yelling for assistance. His attacker also fled the restaurant but in the opposite direction. The security gate, which could be operated only from within the restaurant, was fully open as the two fled.

Anthony Silva, a mall maintenance worker, heard the disturbance and ran to the restaurant. Inside Silva saw the defendant who pointed out the fleeing attacker, and Silva chased after the attacker. The defendant entered the hallway where Goldsmith was standing and asked what had happened. Goldsmith told him that he had just been robbed, and asked the defendant where he had been. The defendant said he had been in the bathroom and then ran down the hallway after Silva.

Meanwhile, Silva had caught the assailant who was identified as Castillo. The knife used in the robbery was recovered and determined to be from the restaurant. Money had been stolen but was not recovered. Goldsmith told police officers he suspected that the defendant was involved in the robbery.

The defendant argues that the state's evidence was not sufficient to prove beyond a reasonable doubt that he was an accessory to robbery in the first degree. The state contends that the facts presented and the inferences that can be properly drawn support a guilty verdict.

" 'When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the jury's verdict. *State* v. *Avis,* 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989); *State* v. *Rice,* 25 Conn. App. 646, 650, 595 A.2d 947 (1991). We then determine on the basis of the facts established and the inferences that reasonably could be drawn from those facts whether the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Hopes,* 26 Conn. App. 367, 376, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson,* 213 Conn. 243, 254, 567 A.2d 1173 (1989).' *State* v. *Lago,* 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992). Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.) *State* v. *Boykin,* 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). Once a defendant has been found guilty of the crime charged, we conduct our judicial review of all of the evidence in the light

most favorable to the prosecution. Id., 564." *State* v. *Hamilton,* 30 Conn. App. 68, 71–72, 618 A.2d 1372, cert. granted, 225 Conn. 910, 621 A.2d 290 (1993).

"When applying the sufficiency of the evidence test, the court must ensure that [e]ach essential element of the crime charged . . . be established by proof beyond a reasonable doubt, and although it is within the province of the [trier] to draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture. . . . Where it cannot be said that a rational trier of fact could find guilt proven beyond a reasonable doubt, then, a conviction cannot constitutionally stand, as it is violative of due process under the fourteenth amendment. . . . [T]he burden rested upon the prosecution to prove the guilt of the accused, i.e., to prove each material element of the offense charged beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Lee,* 32 Conn. App. 84, 97–98, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993).

To prove accessory liability for the crime of robbery in the first degree under General Statutes § 53a-8, the state must establish beyond a reasonable doubt that the defendant had solicited, requested, commanded, or importuned Castillo to commit the crime of robbery in the first degree.[3] "To justify a conviction as an accessory, the state must prove both that the defendant had the intent to aid the principal and that, in so aiding, he had the intent to commit the crime. *State* v. *Foster,* 202 Conn. 520, 525–26, 522 A.2d 277 (1987); *In re Elieser C.,* 14 Conn. App. 445, 449, 541 A.2d 528 (1988).

[3] The state charged that the defendant "did solicit, request, command and importune" Castillo to commit robbery. General Statutes § 53a-8 assigns accessory liability to anyone "who solicits, requests, commands, importunes or intentionally aids another person to engage in" criminal conduct. That the state did not include "intentionally aids" to its charge is immaterial for the purpose of our analysis.

"Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and willingly assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it. *State* v. *Laffin,* 155 Conn. 531, 536, 235 A.2d 650 (1967). *State* v. *Smith,* 15 Conn. App. 122, 127, 543 A.2d 301 [cert. denied, 209 Conn. 805, 548 A.2d 441] (1988)." (Internal quotation marks omitted.) *State* v. *Fudge,* 20 Conn. App. 665, 668, 569 A.2d 1145, cert. denied, 214 Conn. 807, 573 A.2d 321 (1990).

At trial, no evidence was presented to establish that the defendant had requested, solicited, commanded, or importuned Castillo to rob the manager of Arby's restaurant at knifepoint.[4] The defendant's conversation with Castillo at the employees' door cannot be construed as an act soliciting Castillo for the commission of the crime charged. Goldsmith, the only witness to the conversation, did not hear any such request, or any discussion. Construing this evidence in the light most favorable to sustaining the guilty verdict, it is not sufficient to establish beyond a reasonable doubt that the defendant requested, solicited, commanded, or importuned Castillo. No nexus between the two men was demonstrated. While the jury may draw from the facts proven any reasonable, logical inferences, it "may not resort to speculation [or] conjecture." *State* v. *Morrill,* 193 Conn. 602, 608, 478 A.2d 994 (1984). The jury could

---

[4] Castillo, who pleaded guilty to the Arby's robbery, testified on direct examination at the defendant's trial that the defendant had asked him to commit the crime and had provided him with the knife. Because Castillo invoked his fifth amendment right against self-incrimination and refused to submit to cross-examination, the trial court properly ruled his testimony be stricken. *State* v. *Roma,* 199 Conn. 110, 117, 505 A.2d 717 (1986). As a result, the jury could not consider the only direct evidence linking the defendant to the crime charged.

not have reasonably and logically concluded beyond a reasonable doubt that, in their doorway conversation, the defendant solicited Castillo to commit robbery in the first degree. The defendant and Castillo did not know each other. Yet, even if they were acquainted, that fact alone would not incriminate the defendant.[5] The inference that solicitation, an essential element of proving accessory liability, was the result of the conversation between the defendant and Castillo is purely speculation and conjecture on the part of the jury. Thus, we conclude that the cumulative effect of the evidence is not sufficient to establish the defendant's guilt of accessory liability beyond a reasonable doubt.

The judgment is reversed and the case is remanded with direction to render a judgment of acquittal.

In this opinion the other judges concurred.

---

[5] "An accessory must have both the intent to help the principal and the intent to commit the crime. *State* v. *Vincent,* 194 Conn. 198, 207, 479 A.2d 237 (1984)." *State* v. *Smith,* 15 Conn. App. 122, 127, 543 A.2d 301 (1988).