## STATE OF CONNECTICUT *v.* LARRY FULLER
### (AC 17805)

Landau, Hennessy and Dupont, Js.

568

Argued April 26—officially released July 4, 2000

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, deputy assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Larry Fuller, appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree in violation of General Statutes §§ 53a-61 (a) (1) and 53a-8, kidnapping in the second degree in violation of General Statutes §§ 53a-94 (a) and 53a-8, unlawful restraint in the first degree in violation of General Statutes §§ 53a-95 (a) and 53a-8, conspiracy to commit assault in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-61 (a) (1), conspiracy to commit kidnapping in the second degree in violation of §§ 53a-48 (a) and 53a-94 (a) and conspiracy to commit unlawful restraint in the first degree in violation of §§ 53a-48 (a) and 53a-95 (a).[1] On appeal, the defendant claims that the court improperly (1) denied his motion for judgment of acquittal because the evidence was insufficient to sustain his convictions, (2) instructed the jury on the law concerning principal and accessory liability and (3) violated the constitutional prohibition against double jeopardy by convicting and sentencing him separately on three separate counts of conspiracy. We affirm the judgment of the trial court in part and reverse it in part.

The jury reasonably could have found the following facts. In March, 1994, the defendant was living at an

[1] The jury found the defendant not guilty of murder and conspiracy to commit murder.

apartment of a friend, George Gaillard, located at the Bridgewater condominium complex at 320 Quinnipiac Avenue in New Haven. Both the defendant and Gaillard worked for an illegal drug operation that sold drugs in the area. The men sold drugs from Gaillard's apartment and from the nearby apartment of Kenneth Rawls and Mary Kim Michaud located at 210 Burwell Street. The men sold drugs at the Burwell Street apartment on a daily basis from 3 p.m. to midnight. The defendant and Gaillard were close friends and were often seen together apart from when they were engaged in drug transactions.

The victim sold drugs for Gaillard and was a narcotics addict. On the day before her death, the victim visited the Burwell Street apartment twice to purchase drugs from the defendant and Gaillard. Michaud was present during both visits and testified that there had been some tension between the victim and Gaillard because Gaillard had accused the victim of failing to turn over $500 from a drug transaction that she had completed for him.

On the next day, March 28, 1994, at approximately 4:30 a.m., the victim was seen leaving an apartment in the Bridgewater complex with the defendant, Gaillard and a third man known as Little Ninja. Soon thereafter, the victim arrived at the Burwell Street apartment alone and was visibly upset. Rawls told her she could stay at the apartment if she gave him drugs. The victim told Rawls that she did not have any drugs with her but that she would be right back. When the victim did not return after about one hour, Michaud went to the Bridgewater complex to look for her.

At the complex, Michaud witnessed the defendant and Gaillard walking down a sidewalk about ten feet in front of her. Gaillard was carrying a woman, whose head was slumped downward and whose feet were

dragging on the sidewalk. The defendant was walking directly behind Gaillard. Michaud recognized the woman's clothing, sneakers and hair as that of the victim, based on her observation of the victim whom she had seen one hour earlier. Gaillard carried the victim into an abandoned house at 75 Pardee Street and the defendant followed them inside. Approximately five minutes later, both men exited the building alone. The two men then noticed Michaud, who turned and ran to her apartment.

The defendant and Gaillard went to the Burwell Street apartment to sell drugs later that day. Gaillard told Michaud not to say anything about what she might have seen. The men watched the five o'clock news, frequently exchanging glances and paying particular attention to a story about the discovery of a woman's body in a house on Pardee Street. After the men left the apartment that evening, they never returned. Michaud later told the police what she had seen.

The victim's body was discovered lying in a pool of blood in the basement of the house at 75 Pardee Street, with stab wounds to the neck and abdomen and a slashed throat. A medical examination of the victim revealed that she had been stabbed with a knife at least four inches long and that she had wounds that indicated that she had tried to defend herself. A forensic examination of the abandoned house also revealed that the victim had been injured in at least two separate events, that she had been kneeling or crawling when she was stabbed, that she was alive when the wounds had been inflicted and that she was pushed or thrown down the staircase into the basement.

On July 27, 1995, the defendant and Gaillard were arrested in Reading, Pennsylvania, where the two were residing at the house of the defendant's girlfriend. The defendant initially told the police that he and Gaillard were in New Haven on March 28, 1994, but later

recanted his story, claiming that he was in New York at the time of the victim's death. When shown photographs of the victim and Michaud, the defendant denied recognizing either woman.

The defendant was charged in an eight count information with murder, assault in the second degree, kidnapping in the second degree, unlawful restraint in the first degree and four separate charges of conspiracy to commit these crimes. Gaillard testified at the defendant's trial. He stated that he and a man named Michael killed the victim, but on cross-examination, he stated that he alone killed the victim. He testified that he had paged the victim to bring him the drug money that she owed him. When the victim stated that she did not have the money, Gaillard "flipped out" and punched the victim, rendering her unconscious. He dragged her body to the abandoned house. He testified further that it was not his intention to kill the victim when he took her to this house, but that he just "flipped out" again, yelling at the victim. He stabbed her twice in the stomach, slit her throat and threw her down the stairs into the basement. Gaillard also testified that the defendant was not present during the course of these events.

At the close of the state's evidence, the defendant moved for a judgment of acquittal, which motion was denied. At the close of all of the evidence, the defendant renewed his motion for judgment of acquittal on all eight counts. The court denied the motion except as to counts two and six, which alleged assault in the second degree and conspiracy to commit assault in the second degree. The court reduced those charges to assault in the third degree and conspiracy to commit assault in the third degree. The jury found the defendant not guilty of the charges of murder and conspiracy to commit murder, and found him guilty of the remaining charges. The court sentenced the defendant to a total effective sentence of twenty years imprisonment, execution sus-

pended after fifteen years, with five years probation. This appeal followed.

I

The defendant first claims that the court improperly denied his motion for judgment of acquittal because the evidence was insufficient to sustain his convictions.

"The standards by which we review claims of insufficient evidence are well established. When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we must determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Kenney*, 53 Conn. App. 305, 311, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999).

The defendant was charged as both a principal and as an accessory to all of the crimes. General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which consti-

tutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

"Since under our law both principals and accessories are treated as principals . . . if the evidence, taken in the light most favorable to sustaining the verdict, establishes that [the defendant] committed the [crime] charged or did some act which forms . . . a part thereof, or directly or indirectly counseled or procured any persons to commit the offenses or do any act forming a part thereof, then the convictions must stand. . . . To prove guilt as a principal, the state must prove each element of the offense charged beyond a reasonable doubt. To be guilty as an accessory one must share the criminal intent and community of unlawful purpose with the perpetrator of the crime and one must knowingly and wilfully assist the perpetrator in the acts which prepare for, facilitate or consummate it." (Internal quotation marks omitted.) *State* v. *Diaz*, 237 Conn. 518, 543, 679 A.2d 902 (1996). "General Statutes § 53a-8 requires (1) that the accessory have the intent to aid the principal, and (2) that, in so doing, he have the intent to commit the offense with which he is charged." (Internal quotation marks omitted.) *State* v. *Aponte*, 50 Conn. App. 114, 119–20, 718 A.2d 36 (1998), rev'd in part on other grounds, 249 Conn. 735, 737, 738 A.2d 117 (1999). With these principles in mind, we turn to the defendant's claims.

A

The defendant first claims that the evidence was insufficient to support his conviction of assault in the third degree. He claims that the state failed to present sufficient evidence to establish, beyond a reasonable doubt, that he intentionally inflicted physical injury on the victim or assisted Gaillard in committing the assault on the victim. We disagree.

General Statutes § 53a-61 (a) (1) provides: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ." Physical injury is defined to mean "impairment of physical condition or pain . . . ." General Statutes § 53a-3 (3). For the jury to convict the defendant on an accessorial theory, it had to find that he intended both to aid the principal and to commit the underlying offense of assault in the third degree. See *State* v. *Ortiz*, 47 Conn. App. 333, 346, 705 A.2d 554 (1997), cert. denied, 244 Conn. 902, 710 A.2d 175 (1998).

On the basis of our review of the record, we conclude that there was sufficient circumstantial evidence to support the jury's verdict finding the defendant guilty of assault in the third degree. The record contains evidence that the defendant and Gaillard were close friends who belonged to the same drug gang, and that the two lived and sold drugs together. The evidence also established that the defendant was seen with Gaillard prior to and immediately following the beating of the victim that rendered her unconscious. Gaillard testified that he beat the victim because she short-changed him money from drug sales. The fact that the defendant sold drugs with and belonged to the same drug gang as Gaillard tends to show that he knew why Gaillard punched the victim and that he had an interest in the punishment of the victim. Also, the jury could have inferred from the defendant's failure to summon medical assistance that he intended to cause physical injury to her. Thus, from the circumstantial evidence, the jury reasonably could have inferred not only that the defendant was present during the assault of the victim, but also that he intended to cause physical injury to the victim and to assist Gaillard in causing such physical injury.

B

The defendant next claims that the evidence was insufficient to sustain his convictions for kidnapping in the second degree and unlawful restraint in the first degree. We do not agree.

"A person is guilty of kidnapping in the second degree when he abducts another person." General Statutes § 53a-94 (a). General Statutes § 53a-91 (2) defines "abduct" to mean "to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation." "Kidnapping requires that there be an abduction. Abduction means restraint with the intent to prevent liberation. Whether in a given case the restraint is accompanied by the requisite intent, so as to constitute kidnapping, or is merely incidental to another felony, is ordinarily a question for the jury." *State* v. *Lee*, 177 Conn. 335, 343, 417 A.2d 354 (1979). "There is neither any time requirement for the restraint, nor any distance requirement for the asportation to constitute the crime of kidnapping." (Internal quotation marks omitted.) *State* v. *Torrence*, 1 Conn. App. 697, 708, 476 A.2d 598 (1984), aff'd, 196 Conn. 430, 493 A.2d 865 (1985).

Under General Statutes § 53a-95 (a), "[a] person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." "Persons are restrained when their movements are intentionally restricted so as substantially to interfere with their liberty, either (1) by moving them from one place to another, or (2) by confining them either to the place where the restriction commences or to the place where they have been moved without their consent. General Statutes § 53a-91 (1)." (Internal quota-

tion marks omitted.) *State* v. *Luster*, 48 Conn. App. 872, 880, 713 A.2d 277, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998). Thus, for the jury to convict the defendant on an accessorial theory, it had to find that he intended both to aid the principal and to commit the underlying offenses of kidnapping in the second degree and unlawful restraint in the first degree.

The defendant claims that his actions in merely following Gaillard to the abandoned house without helping him to carry the victim or to open doors is insufficient to establish that he was an accessory to the offense of unlawful restraint in the first degree. He also claims that his mere presence at the house at 75 Pardee Street where Gaillard killed the victim was not sufficient to prove that he was an accessory to kidnapping in the second degree. He cites *State* v. *Laffin*, 155 Conn. 531, 536, 235 A.2d 650 (1967), for the proposition that "[o]ne who is present when a crime is committed but neither assists in its commission nor shares in the criminal intent of its perpetrator cannot be convicted as an accessory." The state counters that evidence of presence, combined with other circumstantial evidence, is sufficient to support such a conviction.

In the present case, the jury could have found that the victim was beaten by Gaillard and rendered unconscious. While she was unconscious, the victim was taken to an abandoned house where she was not likely to be found. There is evidence that while at the house, the victim attempted to defend herself and that she was restrained from leaving and protecting herself, resulting in her death. The question presented in this case, therefore, is whether the jury reasonably could have concluded beyond a reasonable doubt that the defendant assisted or abetted Gaillard in the commission of the kidnapping and unlawful restraint of the victim.

"Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may

in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it. . . . Whether a person who is present at the commission of a crime aids or abets its commission depends on the circumstances surrounding his presence there and his conduct while there." (Citations omitted.) Id.

In this case, the jury reasonably could have inferred from the evidence that the defendant was with Gaillard at the time he beat the victim and rendered her unconscious. The defendant was seen following Gaillard, who was carrying the victim's unconscious body to an abandoned house where the victim would not likely be found. The defendant was seen entering the house with Gaillard and the victim. There is evidence from the defensive wounds on the victim that she struggled while in the house, and that she was restrained and kept there against her will. The defendant was also seen leaving the abandoned house with Gaillard without the victim.

"Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Internal quotation marks omitted.) *State* v. *Ruiz*, 171 Conn. 264, 277, 368 A.2d 222 (1976). "It [is] within the province of the jury to draw reasonable and logical inferences from the facts proven." *State* v. *Laffin*, supra, 155 Conn. 536. We conclude that the evidence was sufficient to permit the jury to find, beyond a reasonable doubt, the restraint and the intent necessary to constitute kidnapping in the second degree and unlawful restraint in the first degree.

C

The defendant claims next that there was insufficient evidence to support his convictions for conspiracy to

commit assault in the third degree, conspiracy to commit kidnapping in the second degree and conspiracy to commit unlawful restraint in the first degree. He claims that there was no evidence of an agreement, either express or implied, between him and Gaillard to commit those offenses, or that he participated in any way in furtherance of the conspiracies.

"To establish the crime of conspiracy under § 53a-48 . . . it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . Further, the prosecution must show both that the conspirators intended to agree and that they intended to commit the elements of the underlying offense." (Internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 657–58, 737 A.2d 404 (1999). "Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Kenney*, supra, 53 Conn. App. 312.

"The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . Because of the secret nature of conspiracies, a conviction usually is based on circumstantial evidence. . . . Consequently, it is not necessary to establish that the defendant and his coconspirators signed papers, shook hands, or uttered the words we have an agreement. . . . Indeed, a conspiracy can be inferred from the conduct of the accused

. . . and his coconspirator, as well as from the circumstances presented as evidence in the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 226–27, 733 A.2d 156 (1999).

"An overt act is an essential ingredient of the crime of conspiracy; it may be committed by either coconspirator." (Internal quotation marks omitted.) *State* v. *Gonda*, 53 Conn. App. 842, 851, 732 A.2d 793, cert. denied, 250 Conn. 919, 738 A.2d 660 (1999). "Furthermore, [t]he size of a defendant's role does not determine whether that person may be convicted of conspiracy charges. Rather, what is important is whether the defendant willfully participated in the activities of the conspiracy with knowledge of its illegal ends. . . . Participation in a single act in furtherance of the conspiracy is enough to sustain a finding of knowing participation." (Internal quotation marks omitted.) *State* v. *Forde*, 52 Conn. App. 159, 168, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567, 568 (1999).

The jury reasonably could have inferred from the evidence that the defendant knew that Gaillard was upset with the victim about her failure to turn over drug money, and that he was present with Gaillard when he paged the victim to come to the apartment and knew what Gaillard would do to the victim if she did not turn over the money. The evidence was capable of supporting a conclusion that the defendant and Gaillard had engaged in a mutual plan to assault the victim, and that Gaillard committed an overt act in furtherance of that conspiracy when he punched the victim.

The jury also reasonably could have inferred from the evidence that once the victim was rendered unconscious, the defendant and Gaillard conspired to dispose of her body in an abandoned building where it would not likely be found, and that Gaillard's carrying of the victim to that building constituted an overt act in fur-

therance of the conspiracy to commit kidnapping. The jury, viewing the evidence in its entirety, could have concluded beyond a reasonable doubt that the defendant had the requisite intent to commit the offenses of conspiracy to commit kidnapping in the second degree and to commit assault in the third degree. Because of our conclusion in part III of this opinion, it is not necessary to discuss whether the evidence was sufficient to support a finding of a third agreement between the defendant and Gaillard to restrain the victim unlawfully.

## II

The defendant next claims that the court improperly instructed the jury on the law concerning principal and accessory liability. Specifically, the defendant claims that the court improperly failed to instruct the jury to specify whether it was finding the defendant guilty as either a principal or an accessory. He claims that because there was no evidence indicating that he acted as a principal to any of the offenses he was charged with, it was improper to instruct the jury that it could find him guilty as a principal, thereby inviting the jurors to engage in speculation that he might have acted as a principal. We do not agree.

"The trial court in a criminal proceeding is under no duty to charge in the identical language requested if its charge is accurate, adequate, and, in substance, properly includes material portions of the requested charge. . . . The test is whether the charge as a whole presents the case to the jury so that no injustice will result . . . ." (Citations omitted.) *State* v. *Bagley*, 35 Conn. App. 138, 146, 644 A.2d 386, cert. denied, 231 Conn. 913, 648 A.2d 157 (1994).

"In Connecticut, there is no practical significance to being labeled as a principal or as an accessory. . . . The accessory statute merely provides alternate means by which a substantive crime may be committed." (Cita-

tion omitted; internal quotation marks omitted.) *State v. Faulkner*, 48 Conn. App. 275, 278, 709 A.2d 36 (1998). "Under the modern approach, a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. . . . [T]here is no such crime as being an accessory . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Aponte*, supra, 50 Conn. App. 119.

Because we have concluded that there is sufficient evidence to support the defendant's convictions as an accessory and because there is no difference between being convicted as a principal or as an accessory, the defendant's claim must fail.

## III

The defendant's final claim is that his constitutional right not to be placed in double jeopardy was violated by his convictions and sentencing for three separate conspiracies. He claims that he and Gaillard at most entered into only one agreement to commit all three crimes. The defendant conceded that this double jeopardy claim was not raised at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[2] and the plain error doctrine. Practice Book § 60-5. The defendant's claim is reviewable because it meets the first two prongs of *Golding*. *State*

---

[2] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

v. *Knight,* 56 Conn. App. 845, 853, 747 A.2d 13 (2000); see also *State* v. *Chicano,* 216 Conn. 699, 704, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). We conclude that the defendant's fundamental constitutional right against double jeopardy was clearly violated by his convictions for both conspiracy to commit kidnapping and conspiracy to commit unlawful restraint.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Knight,* supra, 56 Conn. App. 853–54.

"Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed." (Internal quotation marks omitted.) *State* v. *Ortiz,* 252 Conn. 533, 559, 747 A.2d 487 (2000). "A single agreement to commit several crimes constitutes one conspiracy. . . . [M]ultiple agreements to commit separate crimes constitute multiple conspiracies." (Internal quotation marks omitted.) *State* v. *Ketchum,* 45 Conn. App. 270, 278, 696 A.2d 987, cert. denied, 242 Conn. 910, 697 A.2d 368 (1997).

In the present case, the state concedes, in an alternative argument, that the jury reasonably could have concluded that the defendant and Gaillard entered into two separate agreements. The defendant, as noted previously, claims that he at most entered into only one agreement to commit three crimes. The state claims that the two conspiracies consist of an initial agreement to beat the victim and, when she was rendered unconscious, a second agreement to dispose of her body in an abandoned building where it would not likely be found. We agree with the state.

The evidence produced at trial was sufficient to establish that the defendant and Gaillard entered into two separate agreements; first, they agreed to beat the victim when she did not turn over the drug money and, second, after the victim was rendered unconscious, the defendant and Gaillard conspired to dispose of her body in a location where it would not likely be found. The jury could have concluded that it was foreseeable that the victim would need to be restrained if she regained consciousness after the assault on her and that this unlawful restraint is subsumed in the conspiracy to kidnap.

We conclude, however, that the defendant's convictions and sentencing for both conspiracy to commit kidnapping in the second degree and conspiracy to commit unlawful restraint in the first degree constitutes multiple punishments for the same offense.

Accordingly, the judgment as to these two conspiracy counts must be set aside and the case remanded to the trial court with direction to combine the defendant's conspiracy convictions for kidnapping in the second degree and for unlawful restraint in the first degree and to vacate the sentence for one of the conspiracy convictions. *State* v. *Ortiz*, supra, 252 Conn. 559; see

also *State* v. *Howard*, 221 Conn. 447, 462–63, 604 A.2d 1294 (1992); *State* v. *Chicano*, supra, 216 Conn. 725.

The judgment is reversed in part and the case is remanded to the trial court with direction to combine the defendant's convictions for conspiracy to commit kidnapping in the second degree and conspiracy to commit unlawful restraint in the first degree and to vacate the sentence for one of the conspiracy convictions; the judgment on all of the other convictions is affirmed.

In this opinion the other judges concurred.