## STATE OF CONNECTICUT *v.* ARNO SMITH
## (AC 24374)

Dranginis, West and McLachlan, Js.

---

Argued September 23—officially released November 30, 2004

*Glenn W. Falk,* special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Thomas R. Garcia,* assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Arno Smith, appeals from the judgment of conviction, rendered after a jury trial, of (1) larceny in the second degree as a principal and as an accessory in violation of General Statutes §§ 53a-123 (a) (2) and 53a-8 (a), and (2) conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-123 (a) (2) and 53a-48 (a). On appeal, the defendant claims that the trial court improperly denied his motion for a judgment of acquittal. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 29, 2001, the defendant accompanied a woman named Michelle Mills to a U-Haul truck rental office in Hartford. There, on behalf of the defendant and in exchange for cash from the defendant, Mills rented a medium sized, fourteen foot U-Haul truck under her name for one day.[1] The defendant subsequently drove away with the truck. At no point in time did Mills call the police or the U-Haul rental office to report the truck as missing. The truck was returned to the U-Haul rental office on December 7, 2001, two days after the date on which merchandise from Bernie's Audio Video TV Appliance Company (Bernie's) was stolen.

---

[1] On that same day, Mills also rented a second U-Haul truck that was twenty-four feet in length. She returned it to the U-Haul rental office the following morning.

At approximately 6:30 a.m. on December 5, 2001, a delivery truck used to deliver merchandise from Bernie's in Bloomfield was stolen from the store's warehouse. The stolen truck, though used by Bernie's, did not bear the store's logo on its side. At the time of the theft, the truck contained merchandise including, but not limited to, washers, dryers, refrigerators and dishwashers. The combined retail value of all of the merchandise exceeded $5000. After confirming that no authorized delivery truck driver had mistakenly taken the truck, Peter O'Meara, the owner of O'Meara Trucking, from whom Bernie's rented several of its delivery trucks, contacted the Bloomfield police to report the truck as stolen. He and Milton Rosenberg, president of Bernie's, then left with several Bernie's employees to search for the stolen truck.

One-half hour later, at approximately 7 a.m., the defendant's daughter, Shavonne S. Redick, who was residing at 57 Nahum Drive in the Bowles Park housing project in Hartford, awoke to the sound of a loud knock at her door. Upon opening the door, she saw the defendant. He instructed her to leave the door open because "he had some business to take care of." After the defendant walked downstairs, Redick looked out through her kitchen window and saw a large white truck, two U-Haul trucks and a group of approximately eight men. Of those men, Redick recognized Rudy John,[2] a friend of her and her father.

Redick witnessed the defendant, John and the other men moving items from the large white truck into the two U-Haul trucks. Although some of the items were contained in boxes, others were not, including refrigerators, washers and dryers. During that activity, the defendant delivered to Redick's apartment a new mattress

---

[2] On January 17, 2003, prior to his testimony in this case, John was convicted of larceny in the third degree for his role in the theft.

that was wrapped in plastic. The defendant and one of the men then loaded a washer and dryer into a U-Haul truck, which John drove approximately ten to fifteen feet to Redick's apartment building. John attempted to bring the washer and dryer inside, but was unable to do so because the doorway to Redick's apartment was too small. The defendant told John to "just hide the stuff." Consistent with the defendant's command, John moved the washer and dryer to a location behind a building near a friend's apartment. The defendant then left the scene with the two U-Haul trucks.

Later that morning, between approximately 8 and 8:30 a.m., employees from both O'Meara Trucking and Bernie's located the stolen delivery truck in a dirt parking lot on the south side of Nahum Drive. The truck did not contain any of the merchandise that was in it at the time the truck was stolen from the Bernie's warehouse. On March 14, 2002, Redick gave to the Bloomfield police department a statement that implicated the defendant in the larceny of the merchandise from Bernie's. The statement was consistent with the facts previously described.

On February 4, 2003, the defendant was charged by long form information with (1) larceny in the second degree as a principal and as an accessory in violation of §§ 53a-123 (a) (2) and 53a-8 (a), and (2) conspiracy to commit larceny in the second degree violation of §§ 53a-123 (a) (2) and 53a-48 (a). Prior to her testimony at the defendant's trial, Redick received a letter from the defendant in which he both admonished her for "snitching" on him and encouraged her to avoid service of process so that she would not have to testify at his trial. He also suggested that she invoke her right against self-incrimination if called to testify. Furthermore, he instructed her on how to testify. He told her to deny that she received a mattress from him, to refrain from saying that she saw him drive away in a truck and to

state, instead, that she saw him leave the scene in his car. Finally, he warned Redick that if she testified in accordance with her March 14, 2002 statement to the police, she would jeopardize her probation and would be convicted as an accessory to the crime.

After the state rested its case, the defendant filed a motion for a judgment of acquittal, alleging that the evidence presented was insufficient for the jury to find guilt beyond a reasonable doubt. The court denied the motion. The jury subsequently returned a verdict of guilty as to both charges. On April 29, 2003, the court committed the defendant to the custody of the commissioner of correction for ten years, execution suspended after seven years, with fifty-four months of probation. This appeal followed.

On appeal, the defendant claims that the court improperly denied his motion for a judgment of acquittal because there was insufficient evidence to prove each element of the charges beyond a reasonable doubt. We disagree.

"[T]he standard of appellate review of a denial of a motion for a judgment of acquittal [challenging the sufficiency of the evidence] has been settled by judicial decision. . . . [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hurdle*, 85 Conn. App. 128, 140, 856 A.2d 493, cert. denied, 271 Conn. 942, 861 A.2d 516 (2004).

I

The defendant first argues that there was insufficient evidence to convict him of larceny in the second degree

as a principal and as an accessory in violation of §§ 53a-123 (a) (2) and 53a-8 (a) because the state failed to prove that he intentionally sought to steal from the entire truckload of stolen Bernie's merchandise a quantity of items with a total value that exceeded $5000. He asserts that the evidence does not demonstrate beyond a reasonable doubt that he intended personally to steal *all* of the items taken from Bernie's, the total value of which exceeded $5000.[3] We disagree with the defendant's claim that there was insufficient evidence to convict him of larceny in the second degree as a principal and as an accessory.

General Statutes § 53a-119 provides in relevant part that "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." "The elements of larceny are (1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of it permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Toro*, 62 Conn. App. 635, 642, 772 A.2d 648, cert. denied, 256 Conn. 923, 774 A.2d 141 (2001). Section 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property . . . exceeds five thousand dollars . . . ." Under General Statutes § 53a-121 (a) (1), "value means the market value of the property . . . at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property . . . within a reasonable time after the crime. . . ." General Statutes § 53a-121 (b) provides that "[a]mounts

---

[3] Rosenberg testified that the merchandise on the stolen truck had a regular retail sticker price of $10,195.91, a retail sale price of $8842.41 and an actual cost to Bernie's of $7015.79.

included in thefts committed pursuant to one scheme or course of conduct, *whether from the same person or several persons, may be aggregated in determining the grade of the offense.*" (Emphasis added.)

The defendant was charged both as a principal and as an accessory to the crime of larceny in the second degree. "This state . . . long ago adopted the rule that there is no practical significance in being labeled an *accessory* or a *principal* for the purpose of determining criminal responsibility. . . . Under the modern approach, a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. . . . [T]here is no such crime as being an accessory . . . . The accessory statute merely provides alternate means by which a substantive crime may be committed." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 340–41, 696 A.2d 944 (1997); *State* v. *Fuller*, 58 Conn. App. 567, 581–82, 754 A.2d 207, cert. denied, 254 Conn. 918, 759 A.2d 1026 (2000). "[B]ecause there is no difference between being convicted as a principal or as an accessory"; *State* v. *Fuller*, supra, 582; we limit our review to whether there was sufficient evidence to convict the defendant of larceny in the second degree as an accessory.[4]

"To justify a conviction as an accessory, the state must prove both that the defendant had the intent to aid the principal and that, in so aiding, he had the intent to commit the crime." (Internal quotation marks omitted.) *State* v. *Lewis*, 33 Conn. App. 288, 292, 635 A.2d 316 (1993). "[M]ere presence as an inactive com-

---

[4] We also are inclined to limit our review in that manner in order to rebut the defendant's contention that the legitimacy of his conviction of larceny in the second degree is untenable because the state failed to prove that the defendant was the individual who took the Bernie's delivery truck from the store's warehouse.

panion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it." (Internal quotation marks omitted.) *State* v. *Crump*, 201 Conn. 489, 494, 518 A.2d 378 (1986). A defendant may be convicted as an accessory if he intentionally assists in the commission of the crime, regardless of whether he actively participated in every stage of its commission. See *State* v. *Maltese*, 189 Conn. 337, 343, 455 A.2d 1343 (1983).

We agree with the state that when the evidence is construed in the light most favorable to sustaining the verdict, the jury reasonably could have concluded that the cumulative force of the evidence established the defendant's guilt of larceny in the second degree as an accessory beyond a reasonable doubt. There is sufficient evidence to show that the defendant intentionally and actively aided other individuals in the theft of the Bernie's merchandise. As previously mentioned, the jury reasonably could have found that the defendant (1) obtained one of the two U-Haul trucks used in the larceny with the intent that it be used to transport stolen Bernie's merchandise, (2) unloaded stolen items, alongside John and several other men, from the stolen Bernie's delivery truck into the U-Haul trucks, (3) possessed sufficient authority among the group of men to select items, including a mattress, a washer and a dryer, from the stolen goods to give to his daughter, and (4) left the scene at 57 Nahum Drive with the other men and with the two U-Haul trucks used in the theft of the Bernie's merchandise.

The jury, therefore, reasonably could have concluded from those facts that all of the merchandise was stolen as part of a single scheme, even if the defendant was

not the individual who actually stole the delivery truck from the Bernie's warehouse.[5] As such, it would have been appropriate for the jury to have aggregated the value of all the stolen merchandise in determining whether the value of the property that the defendant stole exceeded $5000 and, therefore, whether he was guilty of larceny in the second degree as an accessory. See General Statutes § 53a-121 (b); *State* v. *Desimone*, 241 Conn. 439, 453, 696 A.2d 1235 (1997); *State* v. *Miller*, 34 Conn. App. 250, 254, 641 A.2d 400, cert. denied, 230 Conn. 902, 644 A.2d 916 (1994). Given both the evidence that the aggregate value of all the stolen merchandise exceeded $5000,[6] and the evidence that the defendant intentionally and actively aided the other men in the theft of the merchandise, the jury reasonably could have concluded that he was guilty beyond a reasonable doubt of larceny in the second degree as an accessory.

Because we have concluded that there is sufficient evidence to support the defendant's conviction as an accessory and because there is no difference between being convicted as a principal or as an accessory, the defendant's claim must fail. See *State* v. *Fuller*, supra, 58 Conn. App. 582.

## II

The defendant next argues that there was insufficient evidence to convict him of conspiracy to commit larceny in the second degree in violation of §§ 53a-123 (a) (2) and 53a-48 (a) because the state failed to prove that there was a "meeting of the minds" between him and

[5] General Statutes § 53a-8, the statute under which the defendant was convicted as an accessory, "provides that a person who, with the intent required to commit a crime, does an act for the purpose of assisting another in the commission of the crime is as guilty as the principal actor." *State* v. *Smith*, 15 Conn. App. 122, 126, 543 A.2d 301, cert. denied, 209 Conn. 805, 548 A.2d 441 (1988).

[6] See footnote 3.

the other participants in the larceny to steal the delivery truck from the Bernie's warehouse. We disagree.

"To establish the crime of conspiracy [to commit larceny in the second degree] under General Statutes [§§ 123 (a) (2) and] 53a-48, the state must show that there was an agreement between two or more persons to engage in conduct constituting [the] crime [of larceny in the second degree] and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . Further, the state must show an intent on the part of the accused that conduct constituting [the] crime [of larceny in the second degree] be performed. A conviction of the crime of conspiracy *can be based on circumstantial evidence*, for conspiracies, by their very nature, are formed in secret and only rarely can be proved otherwise than by circumstantial evidence." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Smith*, 15 Conn. App. 122, 125–26, 543 A.2d 301, cert. denied, 209 Conn. 805, 548 A.2d 441 (1988).

We agree with the state that the evidence was sufficient to prove that the defendant was a participant in a conspiracy to commit larceny in the second degree and that there was sufficient evidence to establish that he intended to commit that crime. The jury reasonably could have concluded that the defendant was not merely present at the scene where the group unloaded merchandise from the stolen Bernie's delivery truck. The jury reasonably could have found that the defendant, (1) in preparation for the theft, obtained one of the two U-Haul trucks used in the larceny, (2) participated with others in a planned, coordinated effort to unload items from the stolen Bernie's delivery truck

and load them into the two U-Haul rental trucks and then into his daughter's apartment, and (3) left the scene with members of the group and with the two U-Haul trucks. His statement to Redick that he had "some business to take care of" also suggests that he was not merely present at the scene that morning. Furthermore, the defendant's letter to Redick in which he criticized her for "snitching" also constitutes strong circumstantial evidence of his participation in the conspiracy.[7]

"It is for the jury to decide what reasonable inferences should be properly drawn from the evidence presented. . . . Here, the jury reasonably could have concluded from the evidence in this case that the defendant was engaged in a criminal conspiracy to commit theft." (Citation omitted.) *State* v. *Smith,* supra, 15 Conn. App. 126. From the defendant's conduct prior to, during and after the theft, a reasonable jury easily could infer that he had conspired to commit the theft of the truckload of Bernie's merchandise. See *State* v. *Stellato,* 10 Conn. App. 447, 454, 523 A.2d 1345 (1987) (theft of home heating oil).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] "In a criminal trial, it is relevant to show the conduct of an accused, as well as any statement made by him subsequent to the alleged criminal act, which may fairly be inferred to have been influenced by the criminal act. . . . Our case law has repeatedly approved the admission of threats against or attempted intimidation of witnesses as evidence of consciousness of guilt." (Citation omitted; internal quotation marks omitted.) *State* v. *Rosado,* 52 Conn. App. 408, 426, 726 A.2d 1177 (1999).